FILED
2017 NOV 14 PM 2:21

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JENNIFER CRAMPTON,
    Plaintiff,

-vs-

JON WEIZENBAUM, IN HIS
INDIVIDUAL CAPACITY AND IN HIS
OFFICIAL CAPACITY AS
ADMINISTRATIVE HEAD OF THE
TEXAS DEPARTMENT OF AGING
AND DISABILITY SERVICES;
SYLVIA RODRIGUEZ, IN HER
INDIVIDUAL AND OFFICIAL
CAPACITY; AND TEXAS
DEPARTMENT OF AGING AND
DISABILITY SERVICES,
    Defendants.

CAUSE NO.:
A-16-CA-00959-SS

## ORDER

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendants Jon Weizenbaum, Sylvia Rodriguez, and Texas Department of Aging and Disability Services (collectively, Defendants)' Motion for Summary Judgment [#17], Plaintiff Jennifer Crampton's Response [#26] in opposition, and Defendants' Reply [#27] in support; as well as Crampton's Motion for Leave to File Supplement Summary Judgment Response with Newly Obtained Evidence [#28], and Defendants' Response [#29] in opposition. Having considered the case file and the applicable law, the Court enters the following opinion and orders.

### Background

This case relates to Plaintiff Jennifer Crampton's employment termination from the Defendant Texas Department of Aging and Disability Services (DADS). Crampton was hired by



the Home and Community Support Service Agencies (HCSSA) Licensing and Certification Unit of DADS on January 5, 2015, where she worked as a Licensing and Permit Specialist II. Mot. Summ. J. [#17-6] Ex. E (Rodriguez Decl.) at APPX-0122.

On April 16, 2015, Crampton was counseled by her then manager, Mary Jo Grassmuck, regarding interactions with her co-worker, Olivia Williams, who had complained of disrespectful and unprofessional conduct by Crampton. *See* Mot. Summ. J. [#17-8] Ex. G (Bourland Decl.) at APPX-0218–19; Mot. Summ. J. [#17-2] Ex. A [#17-2] (Crampton Dep. Tr.) at APPX-0020.

Sylvia Rodriguez became manager of the HCSSA group on June 1, 2015, after Grassmuck retired. *See* Rodriguez Decl. at APPX-0122. Shortly thereafter, on July 22, 2015, Crampton was again counseled by Rodriguez and Director Cindy Bourland regarding her interactions Williams along with other work-related issues. Bourland Decl. at APPX-0220.

On September 14, 2015, Rodriguez informed Crampton she had not been selected to interview for the position of Licensing and Permit Specialist IV. Rodriguez Decl. at APPX-0131. That same day, Rodriguez sent an email instructing her team that Management Change Requests would no longer require resumes. *See* Mot. Summ. J. [#17-3] Ex. B (Crampton Report) at APPX-0048. Crampton considered this policy change to be unlawful, and subsequently in September or October 2015 began reporting the change to 40 or 50 different officials, including the Governor, the Office of Attorney General (OAG), and several congressmen. *See* Resp. [#26] at 2. On October 12, 2015 Crampton also filed an employment discrimination complaint with the Civil Rights Office in which she alleged Rodriquez unlawfully denied her an interview for the Licensing and Permit Specialist IV job because of her race, sex, and disability. *See* Resp. [#26-2] Exs. at 52.

2

Crampton was issued a Second Level Reminder on November 9, 2015. Rodriguez Decl. at APPX-0131–34. This reminder documented Crampton's disciplinary history, including complaints from other DADS employees and management. *See id.* Rodriguez and Bourland met with Crampton in person to discuss the Second Level Reminder, and both found Crampton's behavior in the meeting to be inappropriate and consistent with that for which she was being disciplined. *See id.* at APPX-0124; Bourland Decl. at APPX-0220–21.

The Office of Inspector General (OIG) initiated an investigation on December 31, 2015 based on a complaint submitted by Crampton. *See* Mot. Summ. J. [#17-5] Ex. D (OIG Records) at APPX-0118. The OIG originally referred Crampton's complaint to the Civil Rights Office and closed the investigation on January 28, 2106. *See id.* at APPX-0120; *see also* [#17-13] Ex. L (OIG Report) at 3. Crampton continued reporting alleged unlawful conduct to the OIG and others. Resp. [#26] at 3–6. On March 29, 2016, the OIG reopened its investigation based on new information submitted by Crampton. *See* OIG Report at 3. After performing a full investigation, the OIG again closed the investigation finding Crampton's allegations to be unsubstantiated. *See id.* at 1–25.

On March 28, 2016, Rodriguez issued Crampton a Decision-Making Leave (DML) letter documenting Crampton's continued behavior problems at work. *See* Rodriguez Decl. at APPX-0137–39. The DML letter required Crampton take paid time off to make a decision on her job performance and continued employment. Rodriguez Decl. at APPX-0137–39. Rodriguez and Robbi Craig met with Crampton on April 1, 2016 to discuss the DML letter. *See id.* at APPX-0124; *see also* Mot. Summ. J. [#17-7] Ex. F (Craig Decl.) at 154. Audio of the meeting was recorded, and both Rodriguez and Craig documented Crampton's behavior as inappropriate and disrespectful. *Id; see also* Mot. Summ. J. [#17-4] Ex. C (Meeting Tr.). Later that day, DADS

3

management decided Crampton should be issued a Notice of Possible Disciplinary Action (NOPDA). Rodriguez Decl. at APPX-0124. Notes from the meeting indicate Crampton's report the OIG was discussed. *See* Resp. [#26-2] Exs. at 94 (listing "OIG, Civil Rights, Fraud" in meeting notes).

The NOPDA letter was sent to Crampton on April 7, 2016, and she responded to Rodriguez by email on April 15, 2016. *See id.* at APPX-0142–49. After reviewing Crampton's response, Rodriguez issued a Notice of Final Disciplinary Action to Crampton on April 15, 2016, effectively terminating Crampton's employment with DADS. *See id.* at APPX-0150–51.

On July 8, 2016, Crampton filed this lawsuit against Defendants in the 200th Judicial District Court of Travis County, Texas. *See* Notice Removal [#1-4] (Pet.). Defendants removed the case to this Court on August 10, 2016, invoking the Court's jurisdiction under 28 U.S.C. § 1441(b). *See* Notice Removal [#1]. Crampton contends Defendants violated the Texas Whistleblower Act, the First Amendment of the United States Constitution, and Article 1, Section 8 of the Texas Constitution in terminating her employment. Pet. at ¶¶ 68–85.

Defendants filed the instant motion for summary judgment on July 7, 2017, and Crampton responded on July 25, 2017. After summary judgment briefing was completed, Crampton filed a motion for leave to amend her summary judgment response and to supplement the record with a declaration from Mary Jo Grassmuck. Both motions are fully briefed and ripe for consideration.

## Analysis

### I. Plaintiff's Motion for Leave

Plaintiff Crampton seeks leave to amend her summary judgment response and to supplement the record with newly obtained declaration from Mary Jo Grassmuck, her former

4

manager at DADS. *See* Mot. Leave [#28]. Crampton explains she received the declaration on August 4, 2017, after the summary judgment response deadline. *Id.* at 1. Defendants oppose the motion for a lack of good cause and also challenge the admissibility of the statements in the declaration. *See* Resp. [#29].

The Court entered its scheduling order in this case on September 9, 2016. *See* Order of Sep. 9, 2016 [#6]. According to the scheduling order, the parties were to complete discovery before May 1, 2016, and submit dispositive motions by June 2, 2017. *Id.*[1] Crampton describes that she obtained Grassmuck's declaration after these deadlines, but offers no explanation or justification for the delay. Crampton was in communication with Grassmuck months before the summary judgment briefing deadline in this case and thus had ample opportunity to obtain this declaration before the Court's deadline. Resp. [29-1] Ex. A (Crampton Dep. Tr.) at 3. The Court finds no basis for allowing Crampton to supplement the record under these circumstances.

Accordingly, Crampton's motion for leave to amend her summary judgment response and supplement the record with newly obtained evidence is DENIED.

## II. Defendants' Motion for Summary Judgment

### A. Legal Standard—Summary Judgment

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty*

---

[1] By agreement of the parties, the Court extended the dispositive motion deadline to July 7, 2017. Order of May 31, 2017 [#15].

*Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing

sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

**B.    Application**

As indicated above, Plaintiff asserts a claim under the Texas Whistleblower Act, as well as claims for retaliatory discharge under the United States and Texas constitutions. The Court will address each claim in turn.

**1.    Texas Whistleblower Act Claim**

Crampton alleges Defendants violated the Texas Whistleblower Act by terminating her employment within 90 days of her reports of "falsification of government records and violations of Chapter 142 in the Health and Safety Code and Chapter 97 of the Texas Administrative Code, Title 40" to the OAG and OIG. Pet. at ¶¶ 68–77.

To prevail on a Texas Whistleblower Act claim, a plaintiff must show she was a public employee who in good faith reported a violation of law to an appropriate law enforcement authority, and that her report was the cause of the employer's discriminatory conduct. *See Bosque v. Starr County, Tex.*, 630 F. App'x 300, 306 (5th Cir. 2015) (referencing TEX. GOV'T CODE § 554.002). A plaintiff may rely on circumstantial evidence to establish a causal link, including (1) knowledge of the report of illegal conduct, (2) expression of a negative attitude toward the employee's report of the conduct, (3) failure to adhere to established company policies regarding employment decisions, (4) discriminatory treatment in comparison to other similarly situated employees, and (5) evidence that the stated reason for the adverse employment action was false. *See City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 69 (Tex. 2000).

Defendants have moved for summary judgment, arguing Crampton did not report certain alleged wrongdoings to the appropriate government authorities, did not make a good faith report

of a violation of law, and cannot establish but-for causation between her reports and her termination. Mot. Summ. J. [#26] at 13–17. Crampton responds she has shown substantial evidence of each challenged element, thereby precluding summary judgment of her Texas Whistleblower Act claim. Resp. [#26] at 21.

The Court finds Crampton has failed to carry her burden of showing but-for causation. Crampton contends a jury could find her reports to the OIG and OAG caused her termination because these reports were considered in her termination meeting and she was terminated within 90 days of a report to the OIG. *See* Resp. [#26] at 25–26. The Court disagrees.

The cited evidence merely establishes knowledge of Crampton's complaints of alleged wrongdoing. As Crampton suggests, notes from the April 1, 2016 DADS management meeting list "OIG, Civil Rights, Fraud." *See* Resp. [#26-2] Exs. at 94. However, the listing of these reports in meeting notes does not indicate the reports factored into management's disciplinary decision. That is, there is no indication Crampton's report motivated Defendants to terminate her employment. Moreover, these notes are for a meeting to discuss sending Crampton the NPDA letter, not the later discussions on April 15, 2016 in which Defendants considered Crampton's response to the NPDA letter and ultimately decided to terminate her employment. *See* Rodriguez Decl. at 124–25; Mot. Summ. J. [#17-10] Ex. I (Craig Dep. Tr.) at APPX-0249. Crampton has submitted no evidence that her reports to the OIG or OAG factored into the later decision to terminate her employment or any other DADS disciplinary decision. Crampton's reliance on *Torres* is unpersuasive. Unlike here, the employer in *Torres* made statements that the employee's complaint was the reason for the adverse employment decision. *See Torres v. City of San Antonio*, 04-15-00664-CV, 2016 WL 7119056, at *5 (Tex. App.—San Antonio Dec. 7, 2016, no pet.)

8

The timing of Crampton's termination is less suspect than suggested. It is unclear which report Crampton is referring to in her briefing when she alleges termination "within 90 days of a report to OIG." *See* Resp. [#26] at 26. Crampton submitted reports to 40 or 50 different officials, starting in September or October 2015, at least six months before her April 15, 2016 termination. *See* Resp. [#26] at 2, 22. The OIG initiated an investigation on December 31, 2015 based on Crampton's complaint. *See* OIG Report at 3. Any of these reports were more than 90 days before Crampton's termination. Crampton also submitted additional information to the OIG that led to its reopening the investigation on March 29, 2016 as well as an email on April 7, 2016 alleging Ms. Rodriguez committed fraud. Resp. [#26] at 6–7. While the later contacts with the OIG may have been within 90 days of Crampton's termination, she is only entitled to a rebuttable presumption of causation. *See* TEX. GOV. CODE ANN. § 554.004(a). Defendants have offered ample evidence of a non-retaliatory basis for Crampton's termination to rebut this presumption. *See Wyman v. City of Dallas*, CIV.A.3:02-CV-2496-D, 2004 WL 2100257, at *15 (N.D. Tex. Sept. 21, 2004) ("The statutory presumption is rebutted and becomes a nullity once a defendant produces sufficient evidence to suggest that it did not take the adverse employment decision against the employee because of his reports.").

Cases in which circumstantial evidence has survived summary judgment usually involve evidence tying the employer's discrimination to the employee's report. *See e.g., Bosque v. Starr County, Tex.*, 630 Fed. App'x 300, 307 (5th Cir. 2015) (citing employer's knowledge of the report, "substantial and powerful evidence of pretext," and temporal proximity); *City of El Paso v. Parsons*, 353 S.W.3d 215, 226 (Tex. App.—El Paso 2011, no pet.) (citing employer's knowledge, temporal proximity, and evidence employer's non-retaliatory explanations were "pretextual and false"); *Torres*, 2016 WL 7119056, at *5 (citing employer's statement that

9

employee's complaint was the reason for the adverse employment decision, and evidence of employer's resentment of the employee's complaint). By contrast, the evidence here suggests a continued pattern of behavioral issues that started before Crampton submitted any reports of alleged wrongdoing. *See* Rodriguez Decl. at APPX-0130–34; *id* at APPX-0137–146; *id.* at APPX-0150-51.

Finally, Crampton's own statements undermine any causal connection between her termination and her reports to the OIG and OAG. Crampton testified in her deposition that she believed race was the cause of her termination. *See* Crampton Dep. Tr. at APPX-0041 ("Q. Do you think you would've been fired if you were Hispanic? A. No. I don't."). The OIG Report reflects that Crampton told the investigator her Second Level Reminder discipline was retaliation for finding errors on applications. *See* OIG Report at 1, 5, 23. In response to her NPDA letter, Crampon suggested her complaints to the EEOC and the Civil Rights Office were the reasons for her discipline and pending termination. *See* Rodriguez Decl. at APPX-0147 (stating these reports caused hostility that "ha[s] already determined the outcome of this soap opera that our department is famous for.").

For these reasons, the Court concludes no reasonable jury could determine Crampton's reporting to the OIG and OAG were the but-for cause for her termination. Accordingly, Defendants are entitled to summary judgment on this claim.

## B. Retaliatory discharge Claims

Crampton alleges she engaged in protected free speech as a citizen when she reported official misconduct occurring at DADS. Pet. at ¶¶ 78–85. According to Crampton, Defendants were motivated by her protected speech in terminating her employment in violation of the First

Amendment of the United States Constitution and Article 1, Section 8 of the Texas constitution. *Id.*

To establish a retaliatory discharge claim, a plaintiff must show (1) an adverse employment decision; (2) plaintiff's speech involved a matter of public concern; (3) plaintiff's interest in commenting on matters of public concern outweighs the defendant's interest in promoting workplace efficiency; and (4) plaintiff's speech motivated the defendant's action. *Modica v. Taylor*, 465 F.3d 174, 179-80 (5th Cir. 2006); *see also Bentley v. Bunton*, 94 S.W.3d 561, 579 (Tex. 2002) (analyzing Texas Constitution claim pursuant to First Amendment jurisprudence). If the plaintiff can establish these elements, the burden shifts to defendants to show "that they would have come to the same conclusion in the absence of the protected conduct." *Beattie v. Madison County Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001). Whether a public employee spoke on a matter of public concern is a question of law. *Modica*, 465 F.3d at 180.

Defendants have moved for summary judgment, asserting Crampton does not have a triable claim for retaliation. Specifically, Defendants assert Crampton did not engage in protected free speech because her speech was motivated by her own personal interests. Mot. Summ. J. [#17] at 7–9. Defendants also contend Crampton cannot show a causal connection between her speech and her termination because there were legitimate, non-retaliatory reasons for Crampton's termination. *Id.* at 9–10. Finally, Defendants argue Crampton's claims against Defendant Weizenbaum fail under the doctrine of respondeat superior liability, and Defendants Weizenbaum and Rodriguez are entitled to qualified immunity against any claims for damages. *Id.* at 10–12.

The Court finds Defendants are entitled to summary judgment for the following reasons. First, Crampton has failed to identify the precise speech underlying her claims of retaliatory discharge. Crampton's complaint refers to numerous communications made to various persons and agencies at various times. *See* Pet. [#1-4] at ¶¶36, 41, 43, 45, 46, 55–57, 59. Despite being put on notice of her duty to identify the precise speech underlying her claims, Crampton's response to Defendants' summary judgement refers generally her "whistleblowing activity detailed above." *See* Resp. [#26] at 10 (referring back presumably to the eight pages of factual background recounting numerous reports). Crampton submitted initial reports of alleged wrongdoing to "over 40, 50 people," and she admits being unable to recall who she complained to and when. *See* Crampton Dep. Tr. at APPX-0012–14. Precise identification of protected speech is necessary for the Court to consider Crampton's retaliatory discharge claims, and Defendants are entitled to summary judgment because Crampton has failed to carry this burden. *See Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 341–42 (5th Cir. 2003) (dismissing claims because plaintiff failed to offer "precise identification of the speech as to which First Amendment protection is claimed, which would permit consideration of its content, context, and form as required by the Supreme Court").

Second, the Court finds as a matter of law Crampton's speech was not directed to a matter of public concern. Crampton contends her speech was a matter of public concern because she spoke as a citizen and her speech described how DADS was not checking the qualifications of management personnel; how DADS was potentially fraudulently fining agencies; and how her supervisor may have forged signatures on documents. *See* Resp. [#26] at 10–12. Because most anything that occurs within a public agency could be of concern to the public, courts must examine the inherent interest of the matters discussed and the speaker's motivation. *See Harris*

*ex rel. Harris v. Pontotoc County Sch. Dist.*, 635 F.3d 685, 692 (5th Cir. 2011). A close review of the record reflects Crampton was motivated primarily by her own private considerations. Crampton described in her deposition sending reports to various agencies because "I wanted help. I wanted help to save my job, to show what was happening to me." *See* Crampton Dep. Tr. at APPX-0014. She also described following up with the OAG because "I wanted these people to know that they had suspended me." *Id.* at Appx-00015. Interview summaries in the OIG Report confirm Crampton's statements were primarily addressing personal considerations, including her alleged retaliation for finding errors in reports, unfairness of her disciplinary reminder, lack of compensation for working extra hours, isolation from coworkers, unfair hiring practices, and inconsistent disciplinary within her group. *See* OIG Report at 3, 7–8. In addition, Crampton's reports came after she was denied an opportunity to interview for the Licensing and Permit Specialist IV position in September 2015 and her initial discipline by Rodriguez. *See* Rodriguez Decl. at APPX-0130-34. Summary judgment is appropriate in this case because the record reflects Crampton was speaking primarily on private matters, not as a citizen on matters of public concern. *See Harris.*, 635 F.3d at 692 (granting summary judgment on First Amendment claims because plaintiff "did not speak predominantly as a citizen," but instead to personal matters).

In sum, the Court finds Crampton has failed to present a plausible claim retaliatory discharge for violation of her rights United States or Texas Constitutions.

## Conclusion

Accordingly,

IT IS ORDERED that Defendants Jon Weizenbaum, Sylvia Rodriguez, and Texas Department of Aging and Disability Services Motion for Summary Judgment [#17] is GRANTED; and

IT IS FURTHER ORDERED that Plaintiff Jennifer Crampton's Opposed Motion for Leave to File Supplement Summary Judgment Response with Newly Obtained Evidence [#28] is DENIED.

SIGNED this the 14th day of November 2017.

*/s/ Sam Sparks*
SAM SPARKS
UNITED STATES DISTRICT JUDGE